IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WASEEM DAKER, *Plaintiff*, v. Clerk JUANITA M. LAIDLER, and Chief Deputy Clerk CRYSTAL CARTER, *Defendants*. | CIVIL ACTION NO. 5:21-cv-00087-TES-MSH |

**ORDER DENYING MOTION TO VACATE**

Before the Court is Plaintiff Waseem Daker's Motion to Vacate [Doc. 19] pursuant to Federal Rule of Civil Procedure 59(e). This rule clearly states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Nearly two months after the entry of Judgment [Doc. 18] in this case, the Clerk of Court received and docketed Daker's motion on June 13, 2022. *See, e.g.*, [Doc. 19, p. 1]. Although Daker "signed" his motion on May 12, 2022—exactly 28 days after Judgment was entered on April 14, 2022—the Court has serious concerns as to whether it is timely even with the benefit of the prison mailbox rule.

"Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is *delivered to* prison authorities *for mailing*." *Daker v. Comm'r, Ga. Dep't of*

*Corrs.*, 820 F.3d 1278, 1286 (11th Cir. 2016) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)) (emphasis added). "Absent evidence to the contrary," courts should "assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Daker*, 820 F.3d at 1286 (quoting *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)). Sure, Daker may have "dated" his motion, "This 12th day of May, 2022[,]" but there is nothing on his envelope to indicate that it was run through the prison mail system in order for him to inure to the benefit of the prison mailbox rule. *See* [Doc. 19, p. 15] *in connection with* [Doc. 19-1, p. 1].

The envelope in which the Clerk of Court received Daker's motion shows addresses and stamps, but that's it. There's no postmark.[1] *See also* [Doc. 20-1, p. 1] *in connection with* Fed. R. App. P. 4(a)(1)(A). If Daker's motion reached the Clerk of Court from outside of the prison mail system, the prison mailbox rule does not apply, and his Rule 59(e)-based motion is untimely. *See Daker v. Owens*, No. 5:20-cv-00354-TES-CHW, 2021 WL 1321298, at *1 (M.D. Ga. Apr. 8, 2021). While the Court strongly believes this to be the case, it will nevertheless address the merits of Daker's motion.

As grounds for his motion, Daker argues that the Court committed eight different errors in adopting the United States Magistrate Judge's Recommendation of Dismissal [Doc. 3]. *See generally* [Doc. 17]; [Doc. 19]. According to Daker, each and every

---

[1] Without a postmark, Daker's motion (and his Notice of Appeal [Doc. 20] for that matter) could have easily been hand-delivered to the courthouse by someone assisting him with his many lawsuits.

one of these errors led to "manifest injustice." *See generally* [Doc. 19]. However, what Daker presents in his motion are simply his disagreements with the Court's ruling. In other words, Daker's arguments alleging "manifest injustice" are nothing more than dressed-up issues he will all but certainly make to the Eleventh Circuit in yet another appeal.[2] Merely disagreeing with the Court's ruling does not equate to "manifest injustice," nor does the Court's decision to decline to reconsider arguments previously presented to it during the pendency of this case. Daker clearly failed to meet the standard necessary to convince the Court to vacate its judgment.

The Court **DENIES** Daker's Motion to Vacate [Doc. 19].

**SO ORDERED**, this 15th day of June, 2022.

S/ Tilman E. Self, III  
**TILMAN E. SELF, III, JUDGE**  
**UNITED STATES DISTRICT COURT**

---

[2] For example, Daker argues that the Court committed a "manifest injustice" when it took judicial notice of certain documents "without giving him notice." [Doc. 19, p. 2]. This is just not true. Upon Daker raising the issue in his first Objection [Doc. 8] to the magistrate judge's recommendation of dismissal, the Court provided Daker with hard copies of the state-court documents relevant to this case and afforded him ample opportunity (of which he took full advantage) to review them. *See* [Doc. 8, pp. 2–4]; [Doc. 19, p. 2]; *see also* [Doc. 14] *in connection with* [Doc. 15].